THE COUNTRY CLUB LAND ASSOCIATION, Respondent, *v.* FREDERICK LOHBAUER, Individually, and JOHN G. JENKINS, as Sole Surviving Executor of, and Trustee under, the Last Will and Testament of WILLIAM LAYTIN, Deceased, Appellants.

*Action for trespass — what paper title, without proof of adverse possession, is insufficient to sustain the action — when an action in equity lies.*

In an action brought to restrain the defendants from trespassing on certain premises, of which the plaintiff claimed to be the sole owner and entitled to the possession, the plaintiff rested its claim of title upon the will of one James Ferris, who died in 1747 and devised certain lands to his son, James Ferris, who died in 1783, leaving a will by which he devised to his two sons, James Ferris and David Ferris, certain lands, in both of which wills the plaintiff claimed that the lot in question was included in the land described therein as commonage right, although there was nothing up to this time which thus located or fixed it. In 1819 commissioners appointed in an action to partition the real property of James Ferris and David Ferris, conveyed certain property, described by metes and bounds, of which the land in question was a part, to George Ferris, under whom the plaintiff claimed.

The defendants offered in evidence conveyances running back to 1792, from which it might fairly be deduced that the title to an undivided half interest in the lot in question had devolved upon one of the defendants, as trustee, from one John Ferris, an original grantor of that undivided half, and there was proof that such defendant's predecessor in title had been in possession under his deed.

*Held,* that, there being no evidence of adverse possession on the part of the plaintiff or its predecessors in title which would constitute the basis of a claim to an exclusive right to possession as against the grantee of an undivided interest acquired from John Ferris, the plaintiff had not established a right to maintain the action.

VAN BRUNT, P. J., and INGRAHAM, J., dissented.

*It seems,* that the plaintiff was not warranted in bringing an action in equity until it had established its right to the possession of the premises in an action of ejectment or trespass. Per RUMSEY and HATCH, JJ.

APPEAL by the defendants, Frederick Lohbauer and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of December, 1898, upon the decision of the court rendered after a trial at the New York Special Term.

*George S. Espenscheid,* for the appellants.

*Charles D. Ingersoll,* for the respondent.

PATTERSON, J.:

As this cause was tried and under the issues framed by the pleadings, the right of the plaintiff to the relief demanded in the complaint depends upon its establishment of title and the right to the exclusive possession of the premises described in the complaint, which, through the record, are referred to as plot A, and which, for convenience, we will continue to so designate. The court at Special Term decided that the plaintiff purchased in July, 1888, certain real estate now in the city of New York (but which at that time was in the county of Westchester), consisting of about 119 acres of land, and also a certain plot consisting of $1\frac{78}{100}$ acres, being plot "A," bounded on the west by lands of William Laytin, deceased, on the south by the town road leading to the town dock, on the east by Pelham Bay, sometimes called Long Island Sound, on the north by the lands of the plaintiff.

The plaintiff purchased from Henry L. P. Boehme. The court, at Special Term, also found that the plaintiff went into possession of the *locus in quo*, and in the month of June, 1896, built a fence on the line dividing it from the town dock road, which is the southeasterly boundary of said plot; that in June, 1858, one Laytin became seized and possessed of certain real estate situate to the westward of the plot involved in this action, receiving a conveyance from one Abraham B. Cox; that Laytin died in 1874, leaving a last will and testament wherein he devised the premises to the westward of said plot to his executors for certain trust purposes; that the defendant Jenkins is the sole surviving executor and trustee under the will of said Laytin; that in 1896 the defendant Lohbauer leased the whole of the Laytin property from the defendant Jenkins and went into possession thereof, and that, after taking possession, he occupied a house on the Laytin property and then entered upon and continued to use plot "A" in connection with the business he carried on, which was that of a house of public entertainment; that Lohbauer broke the lock upon a gate in the fence, which the plaintiff had erected as above stated, and committed various trespasses upon the property plot A, and put upon such premises a boat house or building, and that neither the defendant Lohbauer nor Jenkins have any right whatsoever to interfere with the possession and occupancy of the plaintiff. The court determined as matter of law that

the plaintiff was entitled to an injunction perpetually restraining the defendants from entering or trespassing upon the premises plot A, and granted other relief, all of which is necessarily based upon an adjudication that the plaintiff was the sole owner of the premises and entitled to the exclusive possession thereof.

The defendants by their answer put in issue the plaintiff's title and right to possession, and affirmatively claimed title in themselves to the extent, at least, of the undivided ownership of one-half of the *locus in quo.*

The record before us consists of a great number of documents, namely, deeds, wills and maps containing descriptions of lands granted or devised, and to which documents the respective parties appeal to substantiate their claims.

The plaintiff, as the source of its title, resorts to the will of one James Ferris, who died in 1747. In that will the testator devised to his son James Ferris all his lands, meadows, houses and improvements, together with "privileges of commonage," etc. James Ferris, the devisee, and who was the eldest son of the testator, died in 1783, leaving a will by which he devised to his two sons, James Ferris and David Ferris, all his lands and meadows lying in Throggs Neck in the borough of Westchester, with all the houses thereon and the appurtenances thereunto belonging; and "also all my right and interest in the commonage of Westchester to be equally divided between them, share and share alike." The plaintiff's contention is that plot "A" is included within what is mentioned in these two wills as commonage right.

There is nothing up to this point which locates or fixes in any way the boundaries of land in which either of these testators had a right of commonage. In 1819 a suit in partition of the real property of James and David Ferris was brought, and commissioners, appointed in that suit for the purposes of partition, conveyed certain land to George Ferris, who was the brother of James and David Ferris. That deed was dated February 20, 1819, but was not recorded until April 30, 1857. Three parcels of land were conveyed thereby. It is the first instrument in plaintiff's chain of title that gives boundaries of any land. Upon a map introduced by the plaintiff in evidence, there are two large parcels marked Nos. 1 and 3, which undoubtedly passed under that deed in partition. There

is lying between them and west of the sound or Pelham Bay, a tract which will hereafter be referred to as the Heaton uplands. Those uplands did not extend to the shore of Long Island Sound, but between them and the shore, as shown on the map referred to, is a parcel No. 2 mentioned in the partition deed; and the plot "A," the subject of dispute in this action, lies at the north end of the strip referred to, and immediately adjoins No. 1, which passed under the commissioners' deed to George Ferris. In this commissioners' deed parcel No. 2 is conveyed to George Ferris, and we find in it for the first time a description which would bring the strip No. 2 in the chain of title under which the plaintiff claims, and that description would include plot "A." Although parcel No. 2 is described by metes and bounds in this commissioners' deed and plot "A" is a part thereof, the title passing by that conveyance would be no greater or other than James Ferris and David Ferris had at the time the partition was made. There is nothing in any anterior muniment of title appearing in the case to show that their interest in parcel No. 2 was other than in commonage or undivided lands.

It was necessary for the plaintiff to show that it had become the sole owner of plot A, a part of parcel No. 2, in order to maintain this action or one in ejectment against another party claiming an interest in the premises and a right to their use. That is the exact claim made by the defendants, and they have introduced in evidence conveyances running back to 1792, from which conveyances it may fairly be deduced, notwithstanding the vagueness of some of the descriptions, that the title to an undivided one-half interest in parcel No. 2 has devolved upon the defendant Jenkins, as trustee, from one John Ferris, an original grantor of that undivided half. While it does not appear who this John Ferris was, yet it is shown that on March 28, 1792, by a conveyance recorded August 22, 1792, he conveyed to Robert Heaton certain uplands, heretofore referred to, and the description in the deed to Heaton locates those uplands as being situated between parcels Nos. 1 and 3, belonging to James Ferris, in whose will the plaintiff claims its title to have originated. The location of the uplands results from the fact that by the description in the Heaton deed they are bounded on the north and south by lands of James Ferris, and there are no other lands so situated with reference to the north and south properties of James

Ferris, as shown in the deeds and maps before us, than those uplands conveyed to Heaton. In the deed to Heaton there is contained the following in the granting clause: " Also the full and equal undivided moiety or half part of the aforesaid undivided lands which are bounded on the north and on the south by two cross fences that extend into the Sound; easterly by the Sound and westwardly by the premises hereby granted." Locating the uplands and the undivided moiety of other lands granted with the uplands, we find nothing that would answer the description of these undivided lands except the strip No. 2, which includes plot " A." This makes as definite a location as can be made of certain lands, the one-half ownership of which was conveyed in 1792 to Heaton, and there is a direct devolution of the title to that undivided one-half down. to Jenkins, trustee, and Lohbauer as lessee.

Thus we find as far back as 1792 the land, the exclusive ownership of which the plaintiff claims, was contained in a parcel in respect of which there was an undivided interest assumed to be in John Ferris, and which he conveyed, and that from that date to the present time there is a chain of title which preserves the continuity of the devolution of that one-half interest until it reached Jenkins, trustee; there is also proof of possession by Laytin under a deed in that chain of title made to him by Cox and wife, recorded June 17, 1858, and there is no adverse possession on the part of the plaintiff or its predecessors in title shown which would be a basis of a claim to an exclusive right to possession as against the grantee of the undivided interest which is traced to John Ferris at the time he conveyed to Heaton.

Therefore, we conclude that the learned court at Special Term erred in the finding it must have reached respecting the plaintiff's right. No such ownership has been shown as would entitle the plaintiff to maintain ejectment against these defendants, but such ownership to an undivided interest has been shown by the defendants as would prevent the plaintiff recovering either in ejectment or in this action.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

RUMSEY and HATCH, JJ., concurred; VAN BRUNT, P. J., and INGRAHAM, J., dissented.

RUMSEY, J. (concurring):

I concur in the reversal of the judgment in this case. The plaintiff was bound to prove not only that it had possession of this property, but that it had the right to possession as against the defendants, and unless it had such right there clearly would be no justification for this judgment. The right of possession in this case could only arise from the title; or, if no title were shown, the plaintiff might, possibly, maintain this action if it were made to appear that it had had an undisputed possession of these premises and the trespass by the defendants worked an irreparable damage. (*Corning* v. *Troy Iron & Nail Factory*, 40 N. Y. 191.) Ordinarily, where one claims that his land has been trespassed upon, he should bring his action at law to recover his damages for the trespass, and he is not warranted in bringing an action in equity unless some necessity is shown for granting equitable relief, which is not the case here. It would have been perfectly proper, in my judgment, to dismiss the complaint, for the reason that the acts of the defendants were not in any event anything but a trespass, and the plaintiff could obtain all the relief he was entitled to by an action at law for damages, and I think that this action in equity should be determined adversely to the plaintiff upon that ground.

But if it should be thought that the acts of the defendants were of such a nature as to work irreparable damage, and thereby entitle the plaintiff to an injunction to restrain them, it still could have no relief in this action unless it showed a right of possession superior to that claimed by the defendants.

In this case the plaintiff depends upon its title, and it claims to derive the right of possession solely from the fact that it has title to the premises. There was an absolute failure, in my judgment, of any proof that the plaintiff had title as against the defendants. When one claims to be the owner of land, and seeks to establish that fact, there are three ways to prove his title. If there is a conceded common source of title, the plaintiff may show that he succeeded to the title from the common source. If there is no common source of title, and no privity between the parties as is the case here, then the plaintiff can only prove his title by deriving it from an original source of the title or by showing that some ancestor or grantor was in possession, and deriving his title from that per-

son. In this case the plaintiff, to establish its title, proved the will of one James Ferris, which was admitted to probate on the 14th of April, 1747, and which devised lands said to include the premises in dispute. But there was no proof that James Ferris was ever in possession of the premises, nor was there any proof that any person was in possession of them by a title derived from James Ferris or by any other right until 1859 or 1860. To that possession reference will be made shortly. The defendant, on the contrary, sought to derive his title from one John Ferris, who conveyed to Robert Heaton, in 1792, certain premises which are said to include the lands in question. There was described as conveyed in this deed an equal undivided one-half of premises, of which the lot in question is said to be a part. The defendant claims to be the owner of this undivided half by title from Robert Heaton, the grantee of Ferris. But there is no proof of possession until 1858 or 1859, at which time evidence of possession is given by both parties. That evidence amounts to this: That one Laytin occupied the land which had originally been conveyed to Heaton, and one Van Antwerp occupied the land which is said to have been devised by James Ferris. It appears that Laytin and Van Antwerp were in possession of these premises from time to time, each claiming the right to be there. So far as appears, that possession continued down to the time when the plaintiff took possession of the premises and afterwards, and it is upon that right that the plaintiff bases its claim to have an injunction to restrain the defendants from their occupation of these lands. The evidence is entirely insufficient to show any adverse possession on the part of the plaintiff, or to show that any of the plaintiff's grantors were in exclusive possession of these premises.

When we first find any one in possession we find Laytin claiming the right to be there and Van Antwerp claiming the same right, and each party holding possession as he was desirous or his necessities seemed to require. I am quite clear that that state of facts did not warrant the plaintiff in claiming it either had or was entitled to exclusive possession of these premises so as to authorize the court to restrain the other occupation of these lands by this defendants.

I think the judgment should be reversed and that the plaintiff should not be allowed to maintain this action, but should be put to

an action in ejectment or trespass to establish its right to the possession of the premises before calling upon the court to exercise its equitable jurisdiction in the case.

HATCH, J., concurred.

INGRAHAM, J. (dissenting):

I cannot concur with Mr. Justice PATTERSON. The action was brought to restrain the defendant from trespassing upon certain property described as plot " A " in the possession of and claimed to be owned by the plaintiff. The court found that upon delivery to the plaintiff of certain deeds, " the plaintiff became the sole owner and went into possession of all of the land mentioned in said two deeds and has continued in possession of all of the same, excepting some parcels of land which it took by deed from James M. Waterbury and wife, which parcels since the date of said deed have been sold or leased by the plaintiff. That no part of plot ' A ' above mentioned has been sold or leased by the plaintiff, and plaintiff is the sole owner and is in possession of said plot ' A,' being the southeasterly portion of the said property shown on said map ; " that the said property was conveyed to the plaintiff by Henry L. P. Boehme and wife ; that the plaintiff had since the year 1888 been in the sole and exclusive possession of the said land, claiming the same under a conveyance to it by metes and bounds.

This finding is amply sustained by the evidence. The plaintiff's title is based upon a partition deed, dated February 20, 1819, which describes the property by metes and bounds, and purports to convey the absolute title in fee simple to one George Ferris ; and from him there is a clear chain of title conveying the property to the plaintiff. In an action for an injunction to restrain the defendants from trespassing upon real property in the possession of and claimed by the plaintiff, I do not understand that it is essential that the plaintiff should prove his title to the property beyond question. It is certainly sufficient if it is shown that the plaintiff is in possession of the property, which possession has continued for years and is based upon the claim of the fee founded upon a deed purporting to convey the land in fee simple. That the plaintiff is and has been since the year

1888 in the occupation of the land, claiming the absolute and exclusive title to it, is not seriously disputed ; and such possession is sustained by the evidence and is found by the court as a fact. That a party thus in possession of land is entitled to maintain an action in equity to restrain a trespass is well settled by numerous authorities. (*Baron* v. *Korn*, 127 N. Y. 224; *Wheelock* v. *Noonan*, 108 id. 179.) It cannot be questioned but that upon the plaintiff's testimony it established a valid title to this property. The title is based upon the deed dated February 20, 1819, made by Samuel Deal and others, commissioners in a partition proceeding in the Supreme Court, to George Ferris. It seems that a certain tract of land, of which the plaintiff claims that the property in question was a part, became vested in one James Ferris, who died about the year 1773, leaving a last will and testament, by which this land was devised to the testator's two sons, James and David Ferris; that in the year 1818 a proceeding was commenced in the Supreme Court to partition such land, and in that proceeding commissioners were duly appointed, who, on the third Monday of October, 1818, reported that certain lands, of which plot " A " was specifically described as a part, could not be partitioned without great prejudice to the owner, and upon that day, by a rule of the Supreme Court duly entered, that report was confirmed, and the commissioners were ordered to sell " all and singular the premises mentioned in the proceedings in this cause and described therein as follows." The order then described by metes and bounds a tract of land, which includes the land claimed by the plaintiff in this action. The commissioners under that order proceeded to sell this property and reported to the Supreme Court on the 21st day of January, 1819, that they had made such sale, whereupon an order was entered confirming the report of the commissioners and directing them to execute a good and sufficient conveyance to the said George Ferris, the purchaser, " which conveyance shall be a bar both in law and equity against all the owners named in the proceedings in this cause and all other persons claiming by, from or under them or any or either of them." In pursuance of such order the commissioners executed and delivered to George Ferris a deed which purported to convey three separate tracts of land, the second of which includes the property in question. Surveyors were called by both the plaintiff and the defendants,

who located the land thus conveyed as including the property in question, and that seems to have been conceded upon the trial. 'The title thus conveyed by this deed to George Ferris.has become vested in the plaintiff by an unbroken line of conveyances describing the premises by metes and bounds and purporting to convey an absolute estate in fee simple in the property conveyed. This deed of the property under which the plaintiff claims title was made upon a judicial sale in partition, and the decree under which such sale was made adjudged that such property be sold by the commissioners. 'To carry out this direction of the court the commissioners sold the whole property, describing it by metes and bounds, and under the direction of the court conveyed such property to George Ferris.

It is well settled that such a deed vests in the purchaser a presumptive title to the property. This presumption, followed by possession, is certainly sufficient to entitle the plaintiff to maintain an action to prevent a trespass upon the property thus conveyed to him. The defendant Jenkins, however, claimed an undivided moiety in the same property, and, upon the trial of this action, attempted to prove that title. This claim is based upon a series of conveyances, the first of which is a deed made by John Ferris and Anna, his wife, to Robert Heaton, dated March 28, 1792, and which conveys a tract of land in Westchester county and also " the full and equal undivided moiety, or half part of the aforesaid undivided lands which are bounded on the north and on the south by two cross fences that extend into the Sound ; easterly by the Sound and westwardly by the premises hereby granted. Containing one hundred and forty acres, be the same more or less."

It is claimed by the defendants that the property, an undivided half of which this conveyance purports to convey, includes the land in question in this action. But I fail to find any evidence from which this property conveyed or attempted to be conveyed by this deed can be located. There is no description by metes and bounds and nothing to locate the property, an undivided moiety of which this deed purports to convey. It is simply described as a half of certain undivided lands which appear to have adjoined the property described in the deed. Where these lands so bounded are is undisclosed. The evidence further shows, however, that this property which was conveyed to Heaton by a deed dated March 28, 1792, was conveyed to

Adam and Noah Brown by a deed dated February 11, 1813, which conveys the property by the same description, and also an undivided moiety or half part of the same undivided common lands. There is further evidence of a deed made by Noah Brown and Ruth, his wife, to Adam Brown, dated August 6, 1817. This deed purports to convey the property conveyed by the deed of Heaton to Adam and Noah Brown, except that there is no conveyance of the undivided lands. After describing the property there conveyed the deed contains this provision : " Together with all the benefits and advantages arising from the undivided lands, the said farm being purchased of Robert Heaton and wife. Containing one hundred and forty acres, more or less." Here is no attempt to convey to the grantee the undivided lands, but the description would be appropriate if the interest of the parties was an easement or right of way upon such undivided lands. It was after this deed was executed that the partition proceeding was commenced and the deed of the commissioners made which conveyed the property by metes and bounds. Taking all the evidence with the presumption that arises from a conveyance made by commissioners in partition, it would seem clear that at this time the Browns made no claim to this property which was included in the sale upon partition, and that the title to this property passed to the grantee in the deed from the commissioners. Adam Brown, the grantee under the last-named deed, died in the latter part of the year 1817, leaving a last will and testament giving his executors power to sell all of his real estate outside of the city of New York, and in pursuance of that power of sale his executors conveyed, by a deed dated February 6, 1833, to one John Drake, the same property described in the conveyance to Adam and Noah Brown, and the defendant Jenkins claims title under this deed. There is no finding by the court that the defendant Jenkins was ever in possession of the property under this deed, and his evidence of possession is extremely shadowy, indicating a series of trespasses or a claim of easement over the land, rather than a claim of fee. But in none of the deeds under which the defendant Jenkins claims title is there a single description of the property by which it can be located. In none of these deeds is this common or undivided land described by any description which would include the land in the possession of the plaintiff. I think, upon the evidence, the plain-

tiff's title to the land was established, or, at any rate, its possession of the property under a deed describing it by metes and bounds, was sufficient to sustain this action to enjoin a trespass.

I think, therefore, that the judgment should be affirmed.

VAN BRUNT, P. J., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.